Good morning, Your Honor. James Muller for the appellant. You might wait until everybody gets sit down. Give them all a chance to get ready. Is this your help over here? This is. Oh, that's your help. All right. Well, he wasn't down, so I thought, golly, if he's your opposition, you ought to give him a chance to sit down and get his paper ready.  Thank you. Go ahead, counsel. Your Honors, on October 16, 2007. And you're Mr. Muller? Yes, Your Honor. All right. James Muller for the appellant. On October 16, 2007, appellant Kent Davis's simple trip to the courthouse in Joshua Tree to help his cancer-stricken mother with a court matter turned into him being falsely arrested and having his previously surgically repaired rotator cuff retorn, all because he passively refused to turn over the keys to his mother's car to make the towing of the vehicle easier for the officer. Now, it's my understanding, and just help me clarify the record, I'm pretty clear, but I want to make sure you agree. At the beginning of this case, you sued under two different claims. You brought the claim under a 1983 claim and also under California civil code. But it's my understanding you have abandoned the 1983 claim. Yes. We abandoned the 1983 claim for false arrest because of the Atwater case and other cases which ---- There was probable cause to arrest him then. Right. If they're under federal law, even if the arrest is for an infraction and even if state law prohibits an arrest, federal courts have determined that that will provide probable cause. So at this point, we're only really looking at whether he had a right to be free from unlawful seizure when he was arrested by the police officer based under California law? Yes, under California law. And under California law, just to be clear, we're looking at 52.1, and this is where the person can collect damages from one who interferes by threats, intimidation, or coercion with the exercise or enjoyment of his rights. Yes, it is, Your Honor. And under California law ---- So was it a threat? Well, I would consider it coercion. So we're really not talking about threats. We're not talking about intimidation. We're going right to coercion. I think coercion is the most applicable part of the statute to this case. All right. And we have a bench trial, right? Yes, we do. And with a bench trial, the judge is the one who is determining the facts? Yes, Your Honor. And we can only undo his facts when? Well, undo his facts, which we're not asking you to do, based on clear and convincing evidence. Okay. So you're not challenging any of his facts? No. We are saying that under the facts that the judge determined, the law indicates that the plaintiff could not have been arrested. Well, if I read very carefully the court's facts, and if I read very carefully the court's facts, which I again got you to suggest you're not challenging. I'm not challenging any of them. And that's what I want to make sure of. It seems to me that the court found that your client was defiant in answering the questions concerning registration. Absolutely. That's what the court found. The court had a lot of adjectives. And not only that. But I would encourage this court to look at the facts. Okay, so we've got a defiant defendant who won't answer questions concerning registration of his car and whether his mother could produce a registration. We have a defiant defendant who says to the policeman, without being asked, I have a concealed weapons permit. We have a defiant defendant who says, who acts irrationally and demands that the officer do nothing until his mother comes. Twice refused to turn over keys to an officer after the officers made a decision to abound. And again demanded the officer wait for his mother when the officer went to secure the car for removal. And on those facts, I'm to suggest that there was coercion and that he could not arrest. Well, the coercion element comes in when he's arrested. I know. But yes, under the facts, if we take out some of the adjectives, under the facts. Well, I have to go with what the district court said, didn't I? Well, you do, but you don't have to. The adjectives are not what probable cause is based upon. Probable cause is based upon the facts. The facts were that he complained about what was going on, that he passively refused to produce the keys. And that's the fact that he passively refused to produce the keys is the basis for his arrest. So let's focus on what really happened there and what the facts were. That's why the officer arrested him. Your officer and the trial court gave four reasons for the arrest. One, that failure to provide the keys made towing more difficult. Again, that doesn't give you how does that give probable cause that he committed a crime, that he's not making the tow truck driver's job easy? That's not. Well, am I really not looking for a level of proof below preponderance of evidence defined in the law as a state of facts that would lead a man of ordinary caution and prudence to believe and consciously entertain a strong suspicion of the guilt of the accused? Isn't that what I'm really looking for? That's what you're looking for. On these facts, right? Right. And the statute says that the statute he was arrested under was a violation of California Appeal Code Section 148. Are we really worried about what the arrest was under? Well, yes. Because it seems to me that it could be probable cause on any crime, couldn't it? Right. But no one's ever suggested any other crime than 148, and that's what he was arrested for. Certainly the appellees have not suggested another crime. But under 148, the cases are clear. There has to be a level of interference that no case ñ well, there has to be a level of interference. And no case has found that conduct like plaintiff's passive refusal to produce his keys to make it easier to tow his mother's vintage Cadillac. Well, I guess I'm having a tough time with your adjective, passive. When I read what the court says, it doesn't seem too passive at all. Well, he was assertive in complaining. The defiant attitude, I ñ maybe the court is claiming ñ Is there such a thing as actively refusing? What is passive? Actively refusing would be something like if he grabbed for the keys and, you know, the plaintiff pulled them away from him or ran away from him. He just simply refused to produce them. And that's not an active act on his part, to refuse? It's the lack of action. He did nothing. Well, he did say, in fact, didn't the officer say, is there anything I can say to you to make you peacefully give me the keys? Yes, the officer... He said, no, there's nothing you can say other than arrest me. There's nothing you can say to get my keys. Actually, the officer said, is there anything I can do to get you to give me the keys? He didn't say peacefully. He was trying to avoid anything beyond that. Right. And the guy said, there's no alternative. If you had to go all the way, I'm not going to give you the keys. Well... That's what he did. He may not have said those words. He didn't say those words. And the assumption of the court's question is that the officer had a right to his keys. No, no, I don't mean... The officer did not have a right to his keys. I'm sorry if you inferred that. I don't infer that. I don't try to imply that. Okay. It's just that the officer invited him to give him the key, and he just refused. You say that's a passive refusal. I'm just wondering. It sounds kind of active to me. Well, whether the court calls it passive or active... How important is it to you that it's passive? Well, it actually doesn't matter so much because... Okay. Well, you're the one that raised the word. I mean, when I heard... I feel like it was passive, but it was... When I heard the word passive, it seems to me that we're going to the probable cause by using that adjective. That's why I let my good colleague question you a little bit, which I raised up. It didn't sound passive to me. It was certainly assertive, vocally assertive. But the fact is that the officer had no right to his keys. The tow didn't have to... He didn't need the keys to tow the car. Well, just a minute. If he did get the keys to tow the car, wasn't it more helpful to the car? Certainly it's easier, but why... There is no requirement that my client make the officer's job easier. Do you deny that it's a good reason to get the keys to protect the car in a towing process? I don't deny that, but... Do you deny that it prevents the defendant from jumping in the car and fleeing? Well, there are no facts to indicate that... Well, that isn't the question. Again, answer my question. The officer now has to decide whether he wants the keys. In the officer's mind, what did happen is not necessarily what we're looking at. It's whether the officer should have some reason to get the keys. And I thought, well, I don't want the officer to have towing my car, and my car's not necessarily a very good one. It's a 2002 old beat-up Chrysler, but I wouldn't want him towing it without my keys. And I guess it also prevents the defendant from getting into the trunk, the contents of which are not known to the officer. Right, but, Your Honor, as Diorre versus Rutherford said, the mere fact that there's some kind of fear in the ether that there may be something in the trunk that he might drive away, unsupported by any facts, anything that appellant did, don't support probable cause. The officer could have a million fears. Well, I was certainly getting the keys would assist in an inventory during impoundment. It might assist, but the car was open. The facts are, the evidence is that's on the record that the car was open. Was the trunk open? The trunk was not open. There's no indication that the impound yard, that the police needed keys to get into that trunk. And I think we can assume that cars are towed all the time. How would they get into the trunk if they didn't have the key? What's that? How would they get into the trunk to see that it's secure and safe and no weapons or things like that? How would they do that without the key? I'm assuming that cars with locked trunks are brought to the tow yard all the time and there are implements that they can use to get inside. You're assuming that? I'm assuming that. Again, we're talking about Mr. Davis not having any duty to make the officer's job easy. We're looking at these possibilities. I don't know that we're looking at it from possibilities. I'm looking at it from what possible things could the officer have had in his mind to ask for the keys. And I'm looking at all the things officers have told me in the past as an old DJ, why they wanted the keys, which is not something I come up with, but these are things that are in their minds. So that's why I was trying to pass them by you. And as to which penal, what is the, how do I, based on these facts, get my willful resist or delay or obstruct a police officer engaged in the performance of his duties? Your Honor, you look at the case law, which plaintiff's appellant provided, which indicates it has to be much more than what appellant did here. And, in fact, there are cases that get that. Well, I guess my worry is this, and this is the problem. I have a judge who's now found facts, which you don't even attack. I don't. And based on those facts and the application of the law as he found it, he has determined a determination. Now you don't challenge his facts, and I look at the statute, and I'm trying to say, how far afield can he be on an abuse of discretion in my book? Because he's the ultimate fact finder here and the ultimate application of the law. Unless he's applied different law than he should apply, I don't know how to upset him. Well, he applied the law incorrectly here. Based on his facts, there has never been a case in California. In fact, there are cases actually which contravene applying or finding a probable cause in 140. What's your best case? My best case? What's your very best case, because I looked at all of them, and I couldn't find any one of them that I thought was contravening? Well, my best case would be the two cases. I think Wetzel is one of them. Wetzel, and I forget the other case, but both of them say that a defendant is not guilty of 148 for simply asserting his constitutional rights. And here he had a right to his keys. They were in his pocket. He had a Fourth Amendment right, a privacy right. He didn't have to turn them over. I don't think we have to get that far because his refusal to turn over the keys was not a 148 in itself. Thank you. Thank you. Appreciate your argument. Thank you. You've been on a heavy barrage of questions, and you stood right with it. Thank you. If it pleases the Court, James Thiebaud for Appellee Sergeant Speer. The bottom line, Your Honor, from our point of view is the trial court ruled that the plaintiff did not sustain his burden to establish the 52.1 claim. For the appellant to basically what the appellant is asking this court to do is find that he did establish his claim. And he's asking this court to do that without a record of the trial. We don't think that that should happen or could happen. I appreciate your argument about that. However, I guess my question to you about that is if he agrees what the district court says in his decision is correct. Well, Your Honor, do I need to look at the underlying facts? I just look at what facts the old EJ suggests, don't I? Right. And the question, I guess, comes up, can this court find that he established his claim without also questioning some of the trial court's factual findings? So what are the factual findings? Your best argument about that is then if you're not going to put any facts that go against what the court found, you're dead in the water. Right. And I think that's what you're saying, isn't it? And that's what I'm saying. Whether he puts the facts in here or not, based on what the court did, you can't get there. Because he had a claim to make, didn't he? He had to establish, and we've got to the point that there was coercion based on what the policeman did. It was coercion. Right. Now, he arrested, yes, but that there was coercion in that situation. And the court said, based on what I have in front of me, there was no coercion. The arrest did not make it coercion. That's correct, Your Honor. And also the court, I would add, found that the appellant Davis delayed, obstructed the officer in the course of his duties. That is a factual finding. At worst, it's a mixed finding of fact and law. It's an application of the law to these facts that are here, finding this is what happened. That's correct, Your Honor. I really have nothing else to add. I don't have any. Judge Fletcher, do you have any questions? No. It seems to me that the critical point is whether the officer had the right to demand that he turn over the keys. Well, Your Honor, there's no contention in this case that the vehicle had not been lawfully impounding or that this officer was not acting within the course of his duties in lawfully impounding that vehicle. And, in fact, I think he did impound the vehicle. And my question is, or my own answer to my own question, is that the police officer, if he didn't get the keys back, was in a position where this fellow, Mr. Davis, might hop into the car and drive away after the car was ordered to be impounded and lawfully to be impounded because there was no registration. So it's kind of an easy answer to my own question, I think, that the police officer could have fear that the car would be driven away and he had a right in that situation to ask for the keys. And I agree with Your Honor. And the trial court so found. And that was a factual finding, which is not questioned on appeal. So that's kind of the beginning and the end for me. Thank you, Your Honor. None of us have any questions. Thank you. Thank you, Your Honor. Thank you for your submittal. How many seconds does he have? Any? I'll give you 30 seconds. That's because I'm an easy judge. Go ahead. Thank you, Your Honor. As to the issue of jumping in the car and running away, there's nothing to indicate that Mr. Davis was going to jump into the car and run away. In fact, this officer was so unthreatened by Mr. Davis that in the middle of their whole encounter while he was checking to see if the car was registered, the officer let Mr. Davis go into the courthouse and conduct his court business. And that's in the record. So this is an after-the-fact thing that the officers come up with. The officer arrested him because he was annoyed that he wouldn't turn over his keys and make his life easier. And that's not probable cause to arrest for 148. All right. Thank you very much. Case 10-55043, Davis v. County of San Bernardino, is submitted.
judges: Brewster, Fletcher B. , Smith N. R.